UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| L&K COFFEE LLC dba MAGNUM ROASTERY and KEVIN KIHNKE, | ) ) ) | Case No. 1:20-cv-00806-JTN-PJG [Lead Case] |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Consolidated with Case Nos. 1:21-cv-120, 1:21-cv-353, and 1:21-cv-142 |
| LM INSURANCE CORPORATION, LIBERTY INSURANCE CORPORATION, SELECTIVE WAY INSURANCE COMPANY, VALLEY FORGE INSURANCE COMPANY, and CONTINENTAL CASUALTY COMPANY | ) ) ) ) ) ) ) ) ) | Judge Janet T. Neff Magistrate Judge Phillip J. Green  APPLIES TO ALL ACTIONS |
| Defendants. | ) ) | |

_____

**PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Dated: August 12, 2021      HATTON, PETRIE & STACKLER APC
/s/ Gregory M. Hatton

_____
Gregory M. Hatton (Cal. Bar No. 119810)
Dan E. Heck (Cal. Bar No. 210383)
Attorneys for Plaintiffs
12 Journey, Ste. 255
Aliso Viejo, CA 92656
Tel. (949) 474-4222
g_hatton@hattonpetrie.com
d_heck@hattonpetrie.com

Dated: August 12, 2021      VARNUM LLP
/s/ John J. Rolecki

_____
John J. Rolecki (P78460)
VARNUM LLP
Attorneys for Plaintiffs
333 Bridge Street NW, Ste. 1700
Grand Rapids, MI 49504
Tel. (616) 336-6000
jjrolecki@varnumlaw.com

TABLE OF CONTENTS

I.    Introduction. ........................................................................................................... 1

II.   Overview of allegations triggering defendants' duty to defend........................................... 1

III.  Standards of review and general rules of law. .................................................................... 3

   A.   Summary adjudication of the duty to defend. .................................................................... 3

   B.   Interpretation of insurance policies under Michigan law................................................. 4

   C.   Duty to defend under Michigan law................................................................................. 4

IV.   There is arguably coverage for product disparagement and slogan infringement under each
of the CGL Policies........................................................................................................................ 5

   A.   The underlying suit seeks damages for personal and advertising injury offenses. .......... 5

      1.   Plaintiffs' claims are arguably based on written publication of material to the public.... 6

      2.   The Kona plaintiffs' allegations arguably constitute actionable disparagement under
Michigan and Washington law. ................................................................................................. 6

      3.   The potential for a finding of product disparagement at trial of the underlying case
triggers the duty to defend under Michigan law. ...................................................................... 9

      4.   The potential for a finding of product disparagement under Washington law at trial of
the underlying case triggers the duty to defend. .................................................................... 12

      5.   The recent *Boyer's* decision does not relieve the insurers of their duty to defend L&K.
15

      6.   The Kona plaintiffs' allegations arguably constitute actionable slogan infringement... 17

   B.   The alleged offenses arise out of L&K's business. ........................................................ 18

   C.   The alleged offenses were committed in the coverage territory. .................................... 18

   D.   The alleged offenses arguably occurred during each policy period............................... 18

V.    Conclusion. ........................................................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Alticor v. Nat'l Union Fire Ins. Co.* (W.D. MI 2013) 916 F.Supp.2d 813 .................... 4, 8, 12, 16

*Auvil v. CBS "60 Minutes"* (E.D. WA 1992) 800 F.Supp. 928 .................................................. 14

*Capitol Indemnity Corp. v. Elston* (7th Cir. 2009) 559 F.3d 616 ................................................ 20

*Cincinnati Ins. Co. v. Interlochen Ctr. for the Arts* (W.D. MI 2003) 2003 U.S.Dist.LEXIS 13288 ................................................................................................................................................ 6

*Cincinnati Insurance Co. v. Zen Design Group, Ltd.* (6th Cir. 2003)  329 F.3d 546 .................. 17

*Crump v. Lafler* (6th Cir. 2011) 657 F.3d 393 ............................................................................ 11

*E.phiphany, Inc. v. St. Paul Fire & Marine Ins. Co.* (N.D. Cal. 2008) 590 F.Supp.2d 1244 ....... 14

*First Am. Nat. Bank v. Fid. & Deposit Co. of Maryland* (6th Cir. 1993) 5 F.3d 982 .................... 4

*Harrow Products, Inc. v. Liberty Mut. Ins. Co.* (6th Cir. 1995) 64 F.3d 1015 .............................. 4

*Hudson Ins. Co. v. Colony Ins. Co.* (9th Cir. 2010) 624 F.3d 1264 ............................................. 17

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.* (2nd Cir. 2001) 252 F.3d 608 .................................... 18

*In re Stringer* (6th Cir. 2018) 586 B.R. 435, 444 n. 7 citing *Crump v. Lafler* (6th Cir. 2011) 657 F.3d 393 ...................................................................................................................................... 11

*Infor Global Solutions (Mich.), Inc. v. St. Paul Fire & Marine Ins. Co.* (N.D. Cal. 2010) 686 F. Supp. 2d 1005 ............................................................................................................................... 12

*Kollenberg* ................................................................................................................................... 11

*Microsoft Corp. v. Zurich Am. Ins. Co.* (W.D. WA 2001) 2001 U.S.Dist.LEXIS 24670 ............ 13

*Neshewat v. Salem* (6th Cir. 1999) 173 F.3d. 357 ....................................................................... 10

*Plaistow Project, LLC v. Ace Prop. & Cas. Ins. Co.* (Dist. Ct. Mass.) 2018 U.S.Dist.LEXIS 155965 ............................................................................................................................................ 15

*Rosenblatt v. Baer* (1966) 383 U.S. 75 ........................................................................................ 13

*S. Bertram, Inc. v. Citizens Ins. Co. of Am.* (6th Cir. 2016) 657 F. App'x 477 ............................ 12

*Talley v. State Farm Fire and Cas. Co.* (6th Cir. 2000) 223 F.3d 323 .......................................... 4

*The Travelers Indem. Co. of Amer., et al. v. Luna Gourmet Coffee & Tea Co., LLC, et al.* (Dist. of CO) 2021 U.S.Dist.LEXIS 67409 ........................................................................................... 16

*Tiscornia v. Travelers Corp.* (W.D. Mich. 1996) 1996 U.S.Dist.LEXIS 17691 ............................ 3

*Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co.* (6th Cir. 2021) 693 F.3d 665 .................. 3

*United Fire & Cas. Co. v. Boulder Plaza Residential, LLC* (10th Cir. 2011) 633 F.3d 951 ........ 16

*Upjohn Co. v. Aetna Cas. & Sur. Co.* (W.D. Mich. 1993) 850 F.Supp. 1342 ................................ 4

*Veteran Med. Prods. v. Bionix Dev. Corp.* (Mich. 2009) 2009 U.S.Dist.LEXIS 52991 .............. 10

*Vitamin Health, Inc. v. Hartford Cas. Ins. Co.* (E.D. MI 2016) 186 F. Supp. 3d 712................... 9

## Statutes

15 U.S.C., § 1125 ............................................................................................................................ v

## Other Authorities

*Auto-Owners Ins. Co. v. Churchman* (Mich. 1992) 440 Mich. 560 ................................................ 4

*Battery Sols, Inc. v. Auto-Owners Ins. Co.* (Mich. 2014) 2014 Mich.App.LEXIS 2886............... 8

*Detroit Edison Co. v. Michigan Mut. Ins. Co.* (1980) 102 Mich.App. 136 .................................... 4

*Grp. Ins. Co. of Michigan v. Czopek* (Mich. 1992) 440 Mich. 590 ................................................ 4

*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (Cal. 2014) 59 Cal.4th 277 ..................... 13

*Jonesville Prods. Inc. v. Transamerica Ins. Group* (1987) 156 Mich.App. 508 ................. 5, 9, 16

*Kollenberg v. Ramirez* (Mich. 1983) 127 Mich.App. 345 ............................................................. 10

*Palmer v. Truck Ins. Exch.* (Cal. 1999) 21 Cal.4th 1109 ............................................................. 18

*Sarkis v. Cincinnati Ins. Co.* (Mich. Ct. App. 2008) 2008 Mich. App. LEXIS 2193 ............... 4, 16

*Sawabini v. Desenberg* (Mich. 1985) 143 Mich.App. 373 ........................................................... 10

*Upjohn Co. v. New Hampshire Ins. Co.* (1991) 438 Mich. 197...................................................... 5

## Treatises

Black's Law Dictionary (10th ed. 2004).......................................................................................... 8

Black's Law Dictionary 483 (7th ed. 1999) .................................................................................... 7

INDEX OF PLAINTIFFS' EXHIBITS

| Exh. | Description |
|---|---|
| 34 | Affidavit of Gregory M. Hatton |
| | |
| 35 | Affidavit of Robert Johnson |
| | |
| 36 | L&K's special interrogatories to Kona Plaintiffs |
| | |
| 37 | United States District Court, Western District of Washington's April 14, 2021 Order granting Liberty's motion to dismiss or alternatively to transfer venue |
| | |
| 38 | Affidavit of Gregory M. Hatton in Support of Request for Judicial Notice |
| | |
| | Exhibit A – Motion for Preliminary Approval of Five Class Settlement and Memorandum in Support, and supporting evidence |
| | |
| | Exhibit B – Hawaii-Grown Coffee Law (Hawaii Revised Statute §486-120.6) |

I.    __Introduction__.

       Plaintiffs L&K Coffee, LLC dba Magnum Coffee and its owner and President Kevin

Kihnke (collectively, "L&K") seek summary adjudication[1] of all insurer defendants'[2] duty to

defend L&K in the underlying case, *Bruce Corker, et al. v. Costco Wholesale Corp., et al.*, case

number 2:19-cv-00290 filed in the United States District Court, Western District of Washington

("underlying case").  The underlying case alleges violation of the Lanham Act for false

designation of origin. (15 U.S.C., § 1125). In their complaints, discovery responses, and demand

letter, the underlying plaintiffs allege two theories of recovery as causes of monetary losses:

commercial product disparagement and slogan infringement.  All of defendants' insurance

policies arguably provide coverage for the alleged product disparagement and slogan

infringement. All of the insurer defendants have nonetheless denied any duty to defend L&K.

       Based on the underlying allegations and a reasonable construction of the relevant

policies, defendants owe L&K a duty to defend.

II.   __Overview of allegations triggering defendants' duty to defend__.

       L&K is a coffee roaster that sells coffee across the United States. (SS[3] 1; SS 11, ¶ 11).

The underlying plaintiffs are coffee farmers from the Kona district of Hawaii, who grow, process

and sell Kona coffee ("Kona plaintiffs"). (SS 11, ¶¶ 1, 5, 6, 7). The Kona plaintiffs allege Kona

coffee is a rare, superior and unique brand of coffee that comprises less than .01% of the world's

---

[1] The Court consolidated these related coverage cases and designated case number 1:20-cv-00806 as the lead case (ECF 39, PageID.2172-2174), realigned the parties (making L&K and Kihnke plaintiffs) (ECF 16, PageID.997), and ordered L&K and Kihnke to file a Consolidated Complaint (ECF 16, PageID.997), which they did. (ECF 46, PageID.2192-2295). The Consolidated Complaint contains separate claims against the insurers for declaratory judgment.

[2] The insurer defendants are LM Insurance Corporation and Liberty Insurance Corporation (collectively, "Liberty"), Selective Way Insurance Company ("Selective"), and Valley Forge Insurance Company and Continental Casualty Company (collectively, "Valley Forge").  The relevant Commercial General Liability ("CGL") policy terms are so similar that all three insurers are commonly referred to collectively as "the insurers."

[3] "SS" refers to the parties' joint separate statement of undisputed material facts, followed by reference to the fact number.  Each page of the relevant portions of the cited evidence has been consecutively paginated in the lower-right corner by exhibit and page number.  The Court should therefore disregard the internal, original pagination that may appear in the exhibits.

coffee supply, and which typically sells for a premium price. (SS 11, ¶¶ 39, 42, 44). They allege L&K falsely designated the origin of L&K's coffee products by selling coffee with labels bearing a Kona designation to retail consumers throughout the United States and on L&K's website, when in fact L&K's Kona-designated products are inferior "commodity coffee" that contain very little Kona coffee. (SS 11, ¶¶ 11, 12, 61, 99-103). The Kona plaintiffs further contend L&K's sale of inferior coffee designated as Kona causes consumers who drink L&K's Kona-labelled coffee to conclude that Kona coffee itself is in fact inferior coffee, thereby driving down demand and therefore the price of plaintiffs' superior Kona coffee. Thus, a core of the Kona plaintiffs' claim of monetary harm is that L&K's sale of inferior commodity coffee bearing a Kona designation disparages plaintiffs' superior Kona coffee product in the retail marketplace where it is sold. (SS 11, ¶¶ 2, 3, 30, 46, 47, 48, 50, 137-140). The Kona plaintiffs seek monetary damages, restitution, and injunctive relief as a result.  (SS 11, ¶¶ 4, 142-145, 146-152).

The Kona plaintiffs' discovery responses consolidate the allegations of product disparagement in their complaint and explain their theory of recovery as follows:

> Defendants are selling run-of-the-mill commodity coffee and labeling it as Kona coffee.  A consumer who tries that inferior product, thinking it is Kona coffee, will conclude that Kona coffee is not worth a premium price.  That consumer will be unwilling to pay a premium price for Kona in the future. By marketing and selling coffee products that falsely designate Kona as the origin of coffee beans, Defendant is damaging the reputation and goodwill of the Kona name. **Every sale of falsely designated product marketed and sold by Defendant <u>disparages</u> Plaintiff's product**.

(SS 17, Exh. 32, 2:7-21, emphasis added)

Thus, the Kona plaintiffs allege L&K engaged in one of the most effective forms of product disparagement imaginable: selling run-of-the-mill commodity coffee and labeling it as Kona coffee, thereby convincing consumers of L&K's inferior product that the Kona plaintiffs' superior product is *also* an inferior product.

Finally, the Kona plaintiffs allege the words "Kona" and "Kona blend" are slogans L&K infringed by selling coffee that was unlawfully designated as Kona. They allege their complaint is sufficient to support introduction of evidence at trial supporting slogan infringement as a

theory of recovery, explaining it this way:

> L&K misappropriated the Kona name by falsely designating its coffee as originating from Kona when, by its own admission, its products contained at most 1% Kona coffee. As alleged in the complaint this misappropriation of the Kona name involved L&K's pervasive use of deceptive slogans on its packaging and in its advertisements. See, e.g., Third Am. Compl. at ¶99 (emphasis added). L&K's slogans that infringe upon Plaintiffs' rights include, but are not limited to, "Kona blend," "Kona High Mountain Coffee," "Grown high in the mountains of Hawaii...," "Kona Mystique," and "Unique Kona Blend Coffee Experience," among others.

(Exh. 33, p. 3, 2nd ¶).

> **Plaintiffs have a claim for slogan infringement, even if not specifically pled**. *See, e.g., Hudson Ins. Co. v. Colony Ins. Co.,* 624 F.3d 1264, 1268 (9th Cir. 2010) (holding that "it does not matter that the NFL complaint never referred to 'steel curtain' as a slogan and never listed slogan infringement as a cause of action," insurance company had a duty to defend); see also *Cincinnati Insurance Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 550, 556 (6th Cir. 2003) (holding that a claim for slogan infringement was adequately pled even given "the complaint's failure to refer to 'The Wearable Light' as a slogan and its failure to include infringement of slogan as a specific claim"). L&K's pervasive and improper use of "Kona" in its various slogans in its advertisements for and on its packaging of its coffee products violated Plaintiffs' exclusive rights for which L&K is liable.

(Exh. 33, p. 9, § D, 2nd sentence, emphasis added).

## III. <u>Standards of review and general rules of law</u>.

### A. <u>Summary adjudication of the duty to defend</u>.

The Court employs a two-part analysis for determining whether an insured is entitled to insurance benefits: (1) determine whether the policy **arguably** provides coverage, and (2) if it does, ascertain whether coverage is negated by an exclusion. (*Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co.* (6th Cir. 2021) 693 F.3d 665). The insured bears the initial burden to show the allegations **arguably** bring the claims within coverage. (*Tiscornia v. Travelers Corp.* (W.D. Mich. 1996) 1996 U.S.Dist.LEXIS 17691, *18). Once the insured meets its burden, the insurer bears the burden of proving any exclusions apply. (*Upjohn Co. v. Aetna Cas. & Sur. Co.* (W.D. Mich. 1993) 850 F.Supp. 1342, 1345). If the insurer shows an exclusion applies, then the insured bears the burden of proving an exception to the exclusion or other inapplicability of it. (*Harrow Products, Inc. v. Liberty Mut. Ins. Co.* (6th Cir. 1995) 64 F.3d 1015, 1020).

B.      Interpretation of insurance policies under Michigan law.

Whether there exists a duty to defend against a particular claim is a question of contract interpretation, a question of law. (*First Am. Nat. Bank v. Fid. & Deposit Co. of Maryland* (6th Cir. 1993) 5 F.3d 982, 984).  In diversity suits, federal courts apply the substantive law of the forum state applicable to actions arising from disputes over insurance coverage, here Michigan. (*Talley v. State Farm Fire and Cas. Co.* (6th Cir. 2000) 223 F.3d 323, 326).

"[T]he court must look at the contract as a whole and give meaning to all terms." (*Auto-Owners Ins. Co. v. Churchman* (Mich. 1992) 440 Mich. 560, 566).  "Terms in an insurance policy either are clearly defined within the policy or are given their commonly used meanings." (*Grp. Ins. Co. of Michigan v. Czopek* (Mich. 1992) 440 Mich. 590, 596).

C.      Duty to defend under Michigan law.

"[A]n insurer has a duty to defend an insured and that such duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as ***the allegations*** against the insured ***even arguably*** come within the policy coverage." (*Detroit Edison Co. v. Michigan Mut. Ins. Co.* (1980) 102 Mich.App. 136, 141-142, original italics, bold added).  The duty to defend arises "if there are any theories of recovery that fall within the policy." (*Alticor v. Nat'l Union Fire Ins. Co.* (W.D. MI 2013) 916 F.Supp.2d 813, 826).  **Any doubt whether the allegations against the insured allege a claim for which the insurer must provide a defense must be resolved in the insured's favor**. (*Id.* at 827).

The duty to defend under Michigan law has a very broad range of triggers. It is not limited by the specific language of the pleadings, and the insurer has an obligation to look behind the allegations in the underlying plaintiffs' complaint. (*Id.* at 825-826).  Triggers of the duty to defend include allegations in discovery responses and testimony. (*Id.* at 826; *Sarkis v. Cincinnati Ins. Co.* (2008) 2008 Mich. App. LEXIS 2193, 2008 WL 4891487, *2) "It is the insurer's duty to look beyond the third party's allegations to analyze whether coverage is *possible*."  (*Jonesville Prods. v. Transamerica Ins. Grp.* (1987) 156 Mich.App. 508, 512-513, *rejected on other grounds by Upjohn v. New Hampshire Ins. Co.* (1991) 438 Mich. 197, 208; italics added.)

**IV.   There is arguably coverage for product disparagement and slogan infringement under each of the CGL Policies**.

All CGL policies at issue provide "offense" based (as opposed to "occurrence" or "claims made") coverage. All insurer defendants agree to defend L&K against: (1) any suit seeking damages for "personal and advertising injury," (2) caused by an offense, (3) arising out of L&K's business, (4) committed in the coverage territory, (5) during the policy period. (SS 3-7; Exh. 1, p. 18, Cov. B, § 1.a and b; Exh. 2, p. 18, Cov. B, § 1.a and b; Exh. 5, p. 148, Cov. B, § 1.a and b; Exh. 6, p. 164, Cov. B, § 1.a and b; Exh. 7, p. 172, Cov. B, § 1.a and b; Exh. 11, p. 108, Cov. B, § 1.a and b; Exh. 12, p. 115, Cov. B, § 1.a and b). To establish the insurer defendants' duty to defend, L&K need only establish the allegations in the underlying case *arguably* meet each of these five elements as follows:

A.      The underlying suit seeks damages for personal and advertising injury offenses.

The policies all provide that each insurer "will pay those sums the insured becomes legally obligated to pay as damages because 'personal and advertising injury' to which this insurance applies." (*Id.*) "Personal and advertising injury' means injury arising out of the following offenses:

> ➢ "…**written publication, in any manner, of material that…disparages a person's or organization's goods, products or services**…" (Selective and Valley Forge CGL policies—SS 4-5, 7; Exh. 5, p. 157, § 14.d; Exh. 6, p. 173, § 14.d; Exh. 7, p. 181, § 14.d; Exh. 11, p. 116, § 14.d; Exh. 12, p. 126, § 14.d, emphasis added)
> ➢ "…**written 'publication' directly to the public at large of material that…disparages a person's or organization's goods, products or services**." (Liberty CGL policies—SS 2, 7; Exh. 1, p. 44 (endorsement); Exh. 2, p. 54 (endorsement), emphasis added).[4]
> ➢ "**Infringing upon another's…slogan in your 'advertisement'.**' (All CGL policies— SS 2, 4, 5, 7; Exh. 1, p. 27, § 14.g; Exh. 2, p. 27, § 14.g; Exh. 5, p. 157, § 14.g; Exh. 6, p. 173, § 14.g; Exh. 7, p. 181, § 14.g; Exh. 11, p. 116, § 14.g; Exh. 12, p. 126, § 14.g, emphasis added).[5]

---

[4]  A Liberty endorsement defines "publication" to mean in relevant part, "an insured's act of disseminating or broadcasting material or information."  (*See* Exh. 1, p. 44; Exh. 2, p. 54).

[5] "Advertisement" is defined in the CGL policies as "a 'notice' that is broadcast or published to the general public … about your goods, products or services for the purpose of attracting customers … [including] "material placed on the internet. (Exh. 1, p. 25, Sec. V, ¶ 1; Exh. 2, p.

  1. Plaintiffs' claims are arguably based on written publication of material to the public.

L&K's sale of "Kona" coffee in labeled bags from shelves of large-box retailers and statements on L&K's website about L&K's coffee products are a manner of written publications of material concerning the Kona Plaintiffs' goods, products, or services. Under the Liberty CGL Policies, placement of those same statements on coffee labels on retail store shelves and on the internet constitutes written publication directly to the public at large of material.  (SS 11, ¶¶ 11-12, 99-104).

  2. The Kona plaintiffs' allegations arguably constitute actionable disparagement under Michigan and Washington law.

The insurers' denials of coverage necessarily include their conclusion that the Kona plaintiffs' allegations do not *arguably* constitute actionable disparagement, and therefore there is no personal and advertising injury claim based on product disparagement. (Exh. 20, p. 17, 2nd bullet; Exh. 26, p. 17, 2nd bullet; Exh. 30, p. 4, last ¶; Exh. 31, p. 5, 2nd ¶). The insurers are wrong for a number of reasons.

  a) The definition of "disparage".

The CGL Policies do not define the word "disparages." (*See*, e.g., Exh. 5, p. 157, § 14.d). However, this Court has already defined "disparage" as used in defendant insurers' CGL policies in *Cincinnati Ins. Co. v. Interlochen Ctr. for the Arts* (W.D. MI 2003) 2003 U.S.Dist.LEXIS 13288, *13 ("*Interlochen*").  In *Interlochen*, the insured sought coverage in an underlying lawsuit for product disparagement under policies containing the same disparagement provisions as the CGL Policies here.  As here, "disparage' was not defined in the CGL policy, and the Court looked to Black's law dictionary for usual and ordinary meanings:

> Black's Law Dictionary offers two definitions for disparage. Under disparage, the definition is to dishonor (something or someone) by comparison; to unjustly discredit or detract from the reputation of (another's property, product, or business). Black's Law Dictionary 483 (7th ed. 1999). Defendant relies on the definition for disparagement, "a false and injurious statement that discredits or detracts from the reputation of another's property, product or business. []"

25, Sec. V, ¶ 1; Exh. 5, p. 155, Sec. V, ¶ 1; Exh. 6, p. 171, Sec. V, ¶ 1; Exh. 7, p. 179, Sec. V, ¶ 1; Exh. 11, p. 114, Sec. V, ¶ 1; Exh. 12, p. 123, Sec. V, ¶ 1).

(*Id*. at \*14).

Resolving any ambiguity in favor of the insured, this Court adopted the insured's definition of "disparage": **a false and injurious statement that discredits or detracts from the reputation of another's property, product, or business.** (*Id*. at \*14-15). That is precisely what the Kona plaintiffs are alleging in their complaints, interrogatory responses, and demand letter.

b)      Disparagement alleged in the 3AC.

...because the counterfeit products are basically comprised of generic commodity coffee, consumers are misled into concluding that Kona coffee is nothing special. These deceived consumers become less likely to pay a premium for authentic Kona coffee in the future. (SS 11, ¶ 2).

Defendants have artificially depressed the market price of authentic Kona coffee, harmed the reputation of authentic Kona coffee as a premium product, and caused consumer confusion as to the legitimate sources of Kona coffee…. (SS 11, ¶ 3).

The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that L&K's Magnum Exotics coffee products contain significant amounts of premium Kona coffee beans in … what is actually ordinary commodity coffee. (SS 11, ¶ 99).

Defendants are selling run-of-the-mill commodity coffee and labeling it as Kona coffee. A consumer who tries that inferior product, thinking it is Kona coffee, will conclude that Kona coffee is not worth a premium price. That consumer will be unwilling to pay a premium price for Kona in the future. (SS 11, ¶ 47).

By marketing and selling coffee products that falsely designate Kona as the origin of coffee beans that are of inferior quality, Defendants are damaging the reputation and goodwill of the Kona name, as well as the market value of authentic Kona coffee… (SS 11, ¶ 137).[6]

The most recent edition of Black's Law Dictionary (10th ed. 2004) contains the same definition as in *Interlochen*. (*See* Black's Law Dict. p. 570, 2nd col. (10th ed. 2004)).  It also adds, "To recover in tort for disparagement, the plaintiff must prove that the statement caused a third party [e.g., a consumer] to take some action resulting in specific pecuniary loss to the

---

[6] *See also* SS 11, ¶¶ 11, 12, 32, 33(b)(i), 101, 102, 103, 135, 136, 138, 139, 141, 142, and 147 for further allegations of "false and injurious statements that detract from the reputation of another's property, product, or business."

plaintiff. – Also termed *injurious falsehood*." (*Id.*)  That is precisely what is alleged in the complaint: "These deceived consumers become less likely to pay a premium for authentic Kona coffee." (SS 11, ¶ 2; *see also Battery Sols, Inc. v. Auto-Owners Ins. Co.* (Mich. 2014) 2014 Mich.App.LEXIS 2886, *6, defining disparagement as "[a] false and injurious statement that discredits or detracts from the reputation of another's…property, product, or business").

c)     <u>Disparagement alleged in discovery responses.</u>

As noted above, the duty to defend cannot be limited by the precise language of the pleadings. (*Alticor*, *supra*, 916 F.Supp.2d at p. 825-826).  In *Alticor*, the Court found that although the underlying complaint did not allege events occurring within the 1998/1999 policy period, the underlying plaintiffs' discovery responses alleging statements occurred as far back as 1998 and 1999 triggered coverage.  (*Id.* at 827-828).  Here, the Court need not look any further than the Kona plaintiffs' discovery responses to find coverage.  L&K asked the Kona plaintiffs in interrogatories to state whether they contend L&K disparaged their products[7], to which they answered in the affirmative:

> Defendants are selling run-of-the-mill commodity coffee and labeling it as Kona coffee.  A consumer who tries that inferior product, thinking it is Kona coffee, will conclude that Kona coffee is not worth a premium price.  That consumer will be unwilling to pay a premium price for Kona in the future. By marketing and selling coffee products that falsely designate Kona as the origin of coffee beans, Defendant is damaging the reputation and goodwill of the Kona name. **Every sale of falsely designated product marketed and sold by Defendant <u>disparages</u> Plaintiff's product**.

(SS 17, Exh. 32, page 2, lines 7-21, emphasis added).

---

[7]  The interrogatories to plaintiff define the term "disparaged" to mean "**impugning the quality or integrity of your [coffee products] in any way that either directly, indirectly, or implicitly, by, for example**": (1) discrediting or detracting from the reputation of the Kona Plaintiffs' coffee products, (2) making comparisons to their coffee products in which the comparison somehow dishonors those products, (3) discrediting or bringing reproach upon their coffee products by comparing those products to inferior products, (4) detracting from their products by making false or misleading statements about L&K's Kona blend coffee products, or (5) falsely designating the geographic or product origin of L&K's Kona blend coffee products. (Exh. 36, p. 3, lines 4-15, emphasis added).

8

       d)     <u>Disparagement alleged in demand letters</u>.

"It is the insurer's duty to look beyond the third party's allegations to analyze whether coverage is possible." (*Jonesville Prods. Inc.*, *supra*, 156 Mich.App. at p. 512-513). In their demand letters to L&K, the Kona plaintiffs allege they will establish at trial with the help of expert testimony, "[e]very advertisement and sale of falsely designated coffee products marked and sold by L&K **disparages the authentic Kona coffee grown, harvested, and sold by Plaintiffs**." (Exh. 33, p. 4, 4th ¶, emphasis added).

      3.     <u>The potential for a finding of product disparagement at trial of the underlying case triggers the duty to defend under Michigan law</u>.

The insurers have argued that the Kona plaintiffs are not alleging disparagement recognized under Michigan law, because the offenses alleged by the Kona plaintiffs arise from L&K's statements about L&K's coffee products, and not Kona coffee.[8]  Thus, they conclude their CGL policies do not apply to this claim. This position is factually and legally inaccurate.

Any assertion the alleged offenses arise out of L&K's statements about L&K's products is factually inaccurate. Rather, the Kona plaintiffs allege that L&K is telling consumers that *the Kona plaintiffs' product* (Kona coffee) is in L&K's bag of coffee, when in fact the coffee in L&K's bag is not Kona coffee, but rather inferior "commodity coffee." (SS 11, ¶¶ 2, 46-47, 99; Exh. 32, p. 2, lines 14-21).   In other words, **the Kona plaintiffs allege that L&K is in effect telling consumers that Kona coffee is nothing more than inferior commodity coffee**, and when consumers taste inferior commodity coffee L&K says is "Kona coffee," they conclude that Kona coffee is inferior, and refuse to buy authentic Kona coffee as a result.  (*Id*.)  **The packaging described in plaintiffs' complaint is therefore alleged to be an "injurious falsehood" about Kona coffee**, and not about L&K's inferior commodity coffee.

---

[8] In making this argument, the insurers rely on the non-binding case of *Vitamin Health, Inc. v. Hartford Cas. Ins. Co*. (E.D. MI 2016) 186 F. Supp. 3d 712, affirmed 684 Fed. Appx. 477 (6th Cir. 2017). Reliance on *Vitamin Health* is misplaced for reasons discussed *infra*.

A brief look at the law applicable to the Kona plaintiffs' underlying disparagement claims shows why the insurers are wrong here, as well.

The *Interlochen* definition of "disparage" does not require that the false or injurious statement be directed at the Kona plaintiffs' coffee products in order to trigger a duty to defend. Rather, under *Interlochen*, all the Kona plaintiffs must allege is that L&K made false or injurious statements that discredited or detracted from the reputation of the Kona plaintiffs' goods, product, or business.[9]

Michigan common law recognizes product disparagement tort as "injurious falsehood." (*Veteran Med. Prods. v. Bionix Dev. Corp.* (Mich. 2009) 2009 U.S.Dist.LEXIS 52991, *11-12, citing *Sawabini v. Desenberg* (Mich. 1985) 143 Mich.App. 373, 383-384). "The gist of the tort of injurious falsehood is some interference with an economically advantageous relationship which results in pecuniary loss." (*Kollenberg v. Ramirez* (Mich. 1983) 127 Mich.App. 345, 350-351). In Michigan, the elements for injurious falsehood are: (1) a false statement harmful to interests of another, (2) the party intended, or knew or should have known would result in harm, and (3) knowing the statement is false or acts in reckless disregard of its truth or falsity. (*Id.*; s*ee also Neshewat v. Salem* (6th Cir. 1999) 173 F.3d. 357, 364—elements of Michigan's tort of injurious falsehood to include commercial disparagement).

"Disparagement, then, may consist of the **publication of matter** [here, the labels and packaging described in the Kona plaintiffs' complaint] derogatory to the plaintiff's … property, or its quality, or to his business in general…. (*Id.* at *363, emphasis added). The communication of an injurious statement must play a "material and substantial part in **inducing others not to deal with the plaintiff, with the result that the plaintiff suffers special damage, in the form of loss of trade or other dealings**." (*Id.*, emphasis added).

Again, that is precisely what the Kona plaintiffs allege here:

[9] *See* W. Page Keeton, et al., Prosser and Keeton on The Law of Torts § 128 at 964 (5th ed. 1984)—describing disparagement as injurious falsehood, recognizing implied disparagement).

Defendants are selling run-of-the-mill commodity coffee and labeling it as Kona coffee. A consumer who tries that inferior product, thinking it is Kona coffee, will conclude that Kona coffee is not worth a premium price. That consumer will be unwilling to pay a premium price for Kona in the future. (SS 11, ¶ 47; *see also* Exh. 32, p. 2, lines 14-21).

By marketing and selling coffee products that falsely designate Kona as the origin of coffee beans that are of inferior quality, Defendants are damaging the reputation and goodwill of the Kona name, as well as the market value of authentic Kona coffee…. (SS 11, ¶ 137).

Finally, Michigan law does not require the disparaging communication be personally directed to the Kona plaintiffs' *product*.  "[It] is equally possible to [disparage] the plaintiff's business by reflecting upon its existence or character…without affecting any property." (*Kollenberg*, *supra*, 127 Mich.App. at p. 351).

The insurers nonetheless contend that if the Kona plaintiffs' allegations do amount to disparagement, the disparagement is implied only, because the alleged disparagement results from L&K's statements about its own products, not Kona coffee. In reliance on *Vitamin Health*, the insurers have argued in this litigation that Michigan law does not recognize disparagement by implication, and therefore their CGL policies do not apply to the Kona plaintiffs' claims. Even if Michigan law were controlling as to the viability of a theory of recovery in a case pending in the state of Washington (discussed below), *Vitamin Health* does not eliminate the potential for coverage here for several reasons.

*Vitamin Health* is not binding precedent because it is not recommended for full text publication. (*Crump v. Lafler* (6th Cir. 2011) 657 F.3d 393, 405).  But more to the point, *Vitamin Health* does not hold there is no claim for implied disparagement in Michigan or the Sixth Circuit. Rather, the court held the underlying complaint in *Vitamin Health* did not allege facts showing implied disparagement.  (*Id*. at 719).  Thus, the court in *Vitamin Health* never reached the question of whether a litigant can state a claim for implied disparagement in Michigan.

Dicta in *Vitamin Health* suggests Michigan law may in fact recognize implied disparagement. Citing its prior decisions in *S. Bertram, Inc. v. Citizens Ins. Co. of Am.* (6th Cir. 2016) 657 F. App'x 477, 481-82, and *Info Global Solutions (Mich.), Inc. v. St. Paul Fire &*

11

*Marine Ins. Co.* (N.D. Cal. 2010) 686 F. Supp. 2d 1005, 1007, the *Vitamin Health* court said, "a disparagement-by-implication claim still requires one company to clearly compare its products to a competitor's."  Again, this is what the Kona plaintiffs allege here: by falsely claiming that its ordinary commodity coffee is Kona coffee, L&K is claiming that its coffee is in fact the equal of Kona coffee. This is a "clear comparison" to Kona coffee. (*See Vitamin Health*, *supra*, 684 Fed. Appx. at p. 481). Under the facts alleged in the underlying case about packaging which creates the impression that the coffee in L&K's bags is from Kona, there is a potential that at trial in the underlying case L&K will be held liable due to a false comparison of its products to Kona coffee.

Finally, implied disparagement fits within the definition of disparagement this Court adopted in *Interlochen* for reasons already discussed.  Nothing about this definition differentiates between "direct" and "implied" disparagement.

Accordingly, there is, at a minimum, a potential the Kona plaintiffs can prove product disparagement at trial under Michigan law. As a result, there is arguably coverage for the product disparagement claims of the Kona plaintiffs under Michigan law.

4.   The potential for a finding of product disparagement under Washington law at trial of the underlying case triggers the duty to defend.

In diversity actions, the law of the jurisdiction where the underlying lawsuit giving rise to the coverage dispute was filed governs the underlying claims. (*Alticor, supra*, 916 F.Supp.2d at p. 822—applying Missouri law to causes of action in underlying lawsuit to determine coverage action filed in Michigan).  Therefore, if there exists a potential under Washington law that plaintiffs could obtain a judgement at trial in Washington based on their product disparagement claims, those claims must be defended even if plaintiffs' claims for product disparagement were not recognized under Michigan law.[10]

---

[10] This is further supported by the fact the CGL Policies provide coverage in all 50 states by defining "coverage territory" to include the United States.  (*See, e.g.,* Exh. 1, p. 25, Sec. V, ¶ 4). Also, the policies do not contain a choice-of-law provision.  Accordingly, the duty to defend must necessarily be based on alleged theories of recovery potentially viable under the law of the forum where the underlying case is filed. Any other ruling would defeat the "50 states coverage"

Under Washington law, the elements for a claim for product disparagement are: (1) a false statement, (2) that impugns the quality or integrity of plaintiff's goods or services, and (3) special damages in the form of lost profits from the loss of specific sales to a specifically identified purchase that would have occurred but for that purchaser hearing the false statement and declining to engage in that purchase. (*Microsoft Corp. v. Zurich Am. Ins. Co.* (W.D. WA 2001) 2001 U.S.Dist.LEXIS 24670, *19).

As discussed above, the Kona plaintiffs allege L&K made false statements (element 1) resulting in special damages and lost profit (element 3). As for the second element, the injured party "must establish that the disparaging communication was personally directed to his or her product." (*Microsoft Corp.*, *supra*, at p. *19, citing *Rosenblatt v. Baer* (1966) 383 U.S. 75, 81-82).  This is known as the "of and concerning" rule. (*Microsoft Corp.*, *supra*, at p. *20; *see, e.g., Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (Cal. 2014) 59 Cal.4th 277, 291).

There is a potential that the trial court in Washington could find the Kona plaintiffs' allegations satisfy the "of and concerning" rule.  Again, the alleged disparaging statements on L&K's packaging and labels is "of and concerning" Kona coffee—namely, that the Kona plaintiffs' superior Kona coffee is in L&K's bags of coffee, when in fact the coffee in L&K's bags is allegedly inferior commodity coffee. It is this statement "of and concerning" Kona coffee that allegedly misleads consumers to believe Kona coffee is "nothing special" when they unknowingly drink L&K's commodity coffee.

There is also an exception to the "of and concerning rule" that the underlying trial court in Washington could potentially apply as well. Where the group subject to the alleged disparagement is small enough that the statement can reasonably be understood to apply to each class member, a plaintiff or his/her specific product need not be specifically named in the disparaging statement.  (*Auvil v. CBS "60 Minutes"* (E.D. WA 1992) 800 F.Supp. 928, 936).

---

provided under the policies. Furthermore, when ruling on Liberty's motion to dismiss the coverage matter Kihnke filed in the Western District of Washington, that Court held the CGL Policies "appl[y] to actions [L&K and Kihnke] take nationally…." (Exh. 37, p. 5, lines 9-11).

Here, the Kona plaintiffs hold themselves out as a small, limited group of Kona coffee farmers, growers, and sellers whose members are easily ascertainable.  They allege they are growers, harvesters, and roasters of Kona coffee within the Kona district, selling their Kona products under their various labels (SS 11, ¶¶ 5-7); that Kona coffee is one of the rarest and most prized coffees in the world that can only be grown in the Kona district on the Big Island of Hawaii (SS 11, ¶ 39); and that only Kona coffee grown in the Kona district can be sold as Kona coffee. (SS 11, ¶ 40).  Based on these allegations, the Kona plaintiffs allege they are comprised of a readily ascertainable group of Kona coffee farmers, harvesters, and roasters. It is therefore entirely possible the trial court applying Washington law could find the "limited group" exception to the "of and concerning rule" applies here.[11]

The potential that the Washington court could find a viable product disparagement claim is enhanced further by the Ninth Circuit's recognition of implied disparagement. (*E.phiphany, Inc. v. St. Paul Fire & Marine Ins. Co.* (N.D. Cal. 2008) 590 F.Supp.2d 1244, 1253—claim for personal and advertising injury is covered by the disparagement clause *even if* the insured did not refer to the competitor's name specifically). The allegations in the underlying complaint in *E.piphany* are strikingly similar to the allegations in the 3AC here.  Sigma Dynamics, a direct competitor of E.piphany, claimed E.piphany falsely advertised its software was the only software that was "all Java" and "fully J2EE." (*Id*. at 1248).  As a result of E.piphany's false statements *about its own products*, E.piphany gained an unfair advantage over Sigma Dynamics, which in fact sold "all Java" and "fully J2EE" software.  (*Id*.)  As a result of E.piphany's false statements, Sigma Dynamics' sales, reputation, and goodwill were damaged and caused purchasers of Sigma Dynamic' products to choose E.piphany instead. (*Id*. at 1249).

---

[11] In *Auvil*, the court noted: "The doctrine of group libel has obvious utility in the defamation arena as evidenced by its universal endorsement. A parallel rule may be useful in disparagement actions provided that one of the goals of the doctrine is served thereby; for example, if the product actually disparaged is not sufficiently identified or if injury is in fact diluted." (*Auvil*, *supra*, 800 F.Supp. at p. 936).

The District Court for the Northern District of California in *E.piphany* found coverage for a claim based on the allegations the insured made false assertions about the characteristics of its products, even though E.piphany never mentioned the underlying plaintiff or its products by name.[12] (*Id*. at 1253). The court found the insured's false claims about its own products were "implied disparagements" of the underlying plaintiff's products. (*Id*.)

To establish defendants' duty to defend, L&K need not "prove" whether the Washington trial court will enter a judgement based in part on product disparagement.  L&K need only show at this point *the potential* for such a judgment. Based on published case law in the Ninth and other Circuits, there is a potential the Court in the Western District of Washington could find, at a minimum, that the Kona plaintiffs' allegations give rise to implied disparagement. (*See Plaistow Project, LLC v. Ace Prop. & Cas. Ins. Co.* (Dist. Ct. Mass.) 2018 U.S.Dist.LEXIS 155965, *4-5—finding of coverage based on what the underlying court may later decide qualifies as "sudden and accidental discharge" under state law).

5.  <u>The recent *Boyer's* decision does not relieve the insurers of their duty to defend L&K</u>.

L&K anticipates its insurers may rely upon the recent decision in *The Travelers Indem. Co. of Amer., et al. v. Luna Gourmet Coffee & Tea Co., LLC, et al.* (Dist. of CO) 2021 U.S.Dist.LEXIS 67409 in the United States District Court for the District of Colorado in which BCC Assets, LLC dba Boyer's Coffee Company was a defendant, who is also a named defendant

---

[12] The relevant policy language in *E.piphany* is substantially similar to the language in the CGL policies at issue here.  The policy defined "advertising injury offense" to include "[m]aking known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others." (*Id*. at 1248). Other jurisdictions also recognize a claim for implied disparagement. (*See Sun Elec Corp v. St. Paul Fire & Marine Ins. Co.* (N.D. Ill. 1995) 1995 US Dist. Lexis 6109—underlying complaint alleged insured claimed products were "more effective" or "superior" in the industry; *Vector Products, Inc. Hartford Fire Insurance Company* (11th Cir. 2005) 397 F.3d 1316—coverage for false advertising claim when competitor and its products were not mentioned in advertising); *Pennfield Oil Co. v. American Feed Industry Ins. Co. Risk Retention Group, Inc.* (D. Neb. 2007) 2007 U.S.Dist.LEXIS 21456—coverage where advertisements hurt the sales, profits and good will of competitor without mentioning its name).

in the underlying case ("Boyer's").  After settling with the Kona plaintiffs, Boyer's asked the District Court to rule on pending cross motions for summary adjudication Travelers' duty to defend Boyer's in this case. (*Id*. at *1-2).  The court granted Travelers' motion, finding no coverage for either product disparagement or slogan infringement. (*Id*. at *26). *Boyer's* is inapposite here, and in fact supports L&K's claim of coverage.

The *Boyer's* court was constrained by Colorado's "complaint rule" in its coverage analysis. (*Id*. at 12-13). The complaint rule in Colorado says an insurer's duty to defend arises solely from the face of the complaint in the underlying case.  (*United Fire & Cas. Co. v. Boulder Plaza Residential, LLC* (10th Cir. 2011) 633 F.3d 951, 960).  Courts sitting in Colorado are therefore limited to the four corners of the underlying complaint and cannot consider extraneous facts when deciding whether a duty to defend exists.

In contrast to Colorado, Michigan has extremely broad rules for what can trigger an insurer's duty to defend. (*Alticor*, *supra*, 916 F.Supp.2d at p. 825-826; *Sarkis*, *supra*, 2008 Mich. App. LEXIS 2193, at *2; *Jonesville Prods., supra*, 156 Mich.App. at p. 512-513).  Thus, unlike the *Boyer's* court, this Court and the insurer defendants are required to look beyond the allegations in the 3AC to determine whether coverage exists, including the Kona plaintiffs' discovery responses and demand letter, and also whether the Kona plaintiffs' allegations can lead to a finding of product disparagement under the Lanham Act or Washington law.

Next, the *Boyer's* court found that a claim for disparagement must be directed at Kona farmers' goods or products, and then held Boyer's publication of "Kona" coffee does not disparage Kona farmers or Kona coffee. (*Boyer's*, *supra*, at pp. 18-20). The *Boyer's* court said Boyer's alleged false statement that its products contain Kona coffee which allegedly impugns or is derogatory to coffee from the Kona District is too remote to constitute disparagement within the meaning of Travelers' policies. (*Id*. at 20-21).

There is nothing "remote" about the disparagement allegations against L&K, including the Kona plaintiffs' discovery responses alleging L&K directly disparages their Kona coffee products—something the *Boyer's* court could not have considered. Furthermore, as explained

16

above, product disparagement under the Lanham Act and Michigan law does not require a party to prove the disparaging communication was directed at the Kona plaintiffs' product.  For all these reasons, *Boyer's* does not assist this court in deciding the duty to defend.

>    6.    The Kona plaintiffs' allegations arguably constitute actionable
>           slogan infringement.

In their demand letter, the Kona plaintiffs explain their claim that L&K infringed[13] upon their rights in advertisements in the form of coffee bags and statements on its website concerning the Kona coffee. (Exh. 33, p. 9, Sec. D).  The Kona plaintiffs' failure to plead a claim for slogan infringement does not erode the potential they can obtain judgement at trial based on slogan infringement. (*Id*.; *see Hudson Ins. Co. v. Colony Ins. Co*. (9th Cir. 2010) 624 F.3d 1264, 1268— "it does not matter that the NFL complaint never referred to 'steel curtain' as a slogan and never listed slogan infringement as a cause of action"); *Cincinnati Insurance Co. v. Zen Design Group, Ltd*. (6th Cir. 2003)  329 F.3d 546, 550, 556 ("Zen Design")—a claim for slogan infringement was adequately pled even given "the complaint's failure to refer to 'The Wearable Light' as a slogan and its failure to include infringement of slogan as a specific claim").

The Kona plaintiffs allege that as farmers and roasters of genuine Kona coffee, the Kona plaintiffs lay claim to the right to use the word "Kona" and phrase "Kona blend" to distinguish their coffee products from others.  (SS 11, ¶¶ 11, 33.b.v, 42, 99-100; Exh. 33, p. 3, 2nd ¶, p. 4, 1st ¶, and p. 9, Sec. D).  The Kona plaintiffs allege L&K made unauthorized use of the word "Kona" by falsely claiming its product contains Kona coffee, which the Kona plaintiffs allege is appropriated by them.  (*Id*.)

The coverage analysis must therefore turn to the meaning of the word "slogan."  The policies do not define the word "slogan." (*See, e.g.,* Exh. 5, p. 157, ¶ 14.g). Slogan is defined as a "distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or

---

[13] The word "infringing" means: "to encroach upon in a way that violates laws or the rights of another." (Merriam-Webster Dict., Merriam-Webster.com, https://www.merriam-webster. com/dictionary/infringing (April 23, 2021)).  The word "infringement," associated with intellectual property rights, means: a violation of a right; invasion of a right; unauthorized use of something already appropriated by another.  (Black's Law Dict. (6th ed. 1991) pp. 537-538).

catch phrase." (*Zen Design* at 556).  A slogan can also be considered "[a] brief attention-getting phrase used in advertising or promotion." (*Palmer v. Truck Ins. Exch.* (Cal. 1999) 21 Cal.4th 1109, 1120).  In *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.* (2nd Cir. 2001) 252 F.3d 608, 616 ("Hugo Boss"), the Second Circuit defined "slogan" to mean a combination of words as something intended to remind the consumer of a brand that promotes or advertises a product mark, in contradistinction to the house or product mark itself.  (*Id.* at 618).

As noted above, the Kona plaintiffs claim "Kona" and "Kona blend" are distinctive, self-evident words used to describe coffee that is authentic Kona coffee grown only in the Kona district by Kona coffee farmers, growers, and roasters.  (SS 11, ¶ 99-100; Exh. 33, p. 3, 2nd ¶, p. 4, 1st ¶, and p. 9, Sec. D).  They claim L&K's use of those words is designed to mislead consumers into believing L&K's products contain Kona coffee or a blend of Kona coffee from the Kona district. (SS 11, ¶ 99).  Thus, according to the Kona plaintiffs, by using the distinct words "Kona" or "Kona blend," L&K is attempting to capture consumers' attention by tricking consumers who want to purchase Kona coffee into purchasing L&K's coffee brands.

These allegations arguably state a covered claim for slogan infringement.

B.      The alleged offenses arise out of L&K's business.

This element of coverage is met. (SS 11, ¶¶ 1-2, 11-12, 99-104).

C.      The alleged offenses were committed in the coverage territory.

As noted above, the CGL Policies define coverage territory to mean the "United States of America." (*See*, e.g., Exh. 1, p. 25, Sec. V, ¶ 4).  The Kona plaintiffs allege the offenses were committed within the United States. (SS 11, ¶¶ 1-2, 11-12, 99-104).

D.      The alleged offenses arguably occurred during each policy period.

As discussed above, all defendants' CGL policies provide offense-based coverage, requiring that the offense (here, publication of disparaging or infringing material) be committed during the policy period. (*See*, e.g., Exh. 1, p. 18, Cov. B, ¶ 1.b).[14]  Collectively, the CGL

---

[14] The policies are silent on whether the resulting *injury* must occur during the policy period or after the policy has expired.  The CGL Policies are therefore ambiguous as to when the injury

Policies provide successive coverage from August 21, 2012 through May 9, 2019. (SS 2, 4, 5).

Initially, it is important to understand there are two essential components of an alleged "offense" of product disparagement and/or slogan infringement under Kona plaintiffs' allegations: (1) a bag or other container of coffee with false or misleading packaging and/or labeling (i.e., "material") that allegedly misleads consumers to conclude there is a substantial quantity of authentic Kona coffee in the bag or container[15], and (2) coffee inside the bag or container that has "little if any" Kona coffee in it.  (SS 11, ¶¶ 99-104). The mere publication and distribution of the "material" described in plaintiffs' complaint (fn. 15, *supra*) is not enough. The "material" must be rendered false or misleading by the percentage of L&K's product (Kona coffee) in the bag or container. A bag or container that is the "material" described in the Kona plaintiffs' complaint may *not* constitute an "offense" when first published in the marketplace because it contains a "high enough" percentage of Kona coffee to not be *actionable*. This same packaging and labeling may later constitute an offense because it is later used to sell coffee that contains "little if any" Kona coffee. (*See* Exh. 35, Johnson Decl. -- varying percentages of Kona coffee in new and different packaging sold for the first time during each policy period.)

---

must occur in relation to the offense.  That ambiguity (if dispositive in any regard on the duty to defend) must be resolved in favor of the insured.  (*See State Farm Fire and Cas. Co. v. McGowan* (6th Cir. 2005) 421 F.3d 433, 439—adopting same rationale in case applying Tennessee law, where court determined insurer had duty to defend because the policy was "ambiguous as to when the injury must occur."

[15] These ever-changing product packages and labels are the "material" by which the alleged product disparagement and slogan infringement occurs.  (SS 11, ¶ 99—"With its marketing and packaging, L&K uses deceptive taglines and slogans such as "Certified," "Kona High Mountain Coffee" and "100% High MT. Arabica Coffee." On its online store, L&K describes its "Kona" coffee product as "Grown high in the mountains of Hawaii, this blended coffee has the perfect balance of light taste, full body and moderate acidity." …L&K also designs its Magnum Exotics product packaging with imagery and text intended to mislead the consumer into believing that the coffee product contains coffee beans predominantly, if not exclusively, grown in Hawaii, and specifically in the Kona region. The deceptive imagery utilized by L&K includes illustrations of beaches, humming birds, hibiscus flowers, toucan birds, and tropical islands. The deceptive marketing, product names, and package designs … deliberately mislead the consumer into believing that L&K's Magnum Exotics coffee products contain significant amounts of premium Kona coffee beans….")

The 3AC alleges offenses "*during the time that any Defendant* [e.g., L&K] *sold coffee product* with the *false* designation of Kona as the origin of the coffee product." (SS 11, ¶ 32, italics added; *see also* Exh. 32, page 2, lines 19-21—"*[e]very sale* of falsely designated product *marketed and sold* by [L&K] disparages Plaintiff's product," italics added.) This covers all relevant policy periods. (*Id.*; *see also* Exh. 35). However, the 3AC does not state what percentage of Kona coffee is required in a bag of coffee in order for the labelling and packaging to be "false."[16] Thus, there is the potential that at trial in Washington, *any* "insubstantial" percentage of Kona coffee contained in one of L&K's varied packages and released to market for the first time during a relevant policy period could be determined to be a "low enough" percentage of Kona coffee to be actionable based on disparagement or slogan infringement.

The multitude of new product releases during every policy year, combined with the widely varying percentages of Kona coffee in each package, create the potential for a judgment based on at least one "new" offense in each insurer's individual policy periods. (*See* Exh. 35). This both solidifies each insurer's duty to defend, and eliminates any insurer's ability to rely on a prior publication exclusion. A prior publication exclusion "abrogates the insurer's duty to defend only where it can prove the insured's prior publication of **the same actionable, injurious material** alleged in the underlying complaint occurred prior to the beginning of the policy." (*See Capitol Indemnity Corp. v. Elston* (7th Cir. 2009) 559 F.3d 616, 620, emphasis added.)

## V.   <u>Conclusion</u>.

For these reasons, L&K asks the Court to grant summary adjudication on L&K's separate claims for declaratory judgment against each insurer defendant on the duty to defend.

---

[16]  This "percentage" issue is hotly disputed and remains one for the underlying trier of fact and the court in Washington. The terms of settlements by other defendants already approved by order of the underlying District Court in Washington do not clear up what percentage of Kona coffee the Kona plaintiffs consider sufficient to avoid liability.  (*See* Exh. 38, Hatton Decl. in Support of Req. for Jud. Notice, ¶¶ 4(a) through 4(e), quoting key excerpts of *filed and approved* settlement agreements attached as part of Exhibit A thereto).

**<u>CERTIFICATE OF COMPLIANCE</u>**

I certify the word count for this brief is 8,949, which includes headings, footnotes, citations, and quotations. This word count was generated by Microsoft Word 2016.

/s/ Dan E. Heck
_____
Dan E. Heck (Cal. Bar No. 210383)
HATTON, PETRIE & STACKLER APC